**Harry B. McILVAINE, Jr., Appellant,**

v.

**STATE of Minnesota, Respondent.**

**No. 49050.**

Supreme Court of Minnesota.

May 25, 1979.

C. Paul Jones, Public Defender, and Kathy A. King, Asst. Public Defender, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., St. Paul, Gary W. Flakne, County Atty., Vernon E. Bergstrom, Chief Asst. County Atty., Appellate Div., and David W. Larson, Asst. County Atty., Minneapolis, for respondent.

SHERAN, Chief Justice.

This is an appeal from an order of the district court denying a petitioner for post-conviction relief filed 2½ years after petitioner's conviction in April 1975. Petitioner, who was tried on a charge of first-degree murder, was found guilty by the jury of the lesser-included offense of second-degree murder, and was sentenced to a maximum indeterminate term of 40 years in prison. Petitioner's appeal raises two issues: whether the district court erred in denying petitioner's motion to dismiss the indictment, and whether the trial court erred in admitting other-crime evidence. We affirm.

Petitioner's conviction stems from the December 1974 shooting death of 37-year-old Lloyd Scharber, who was then living in the McIlvaine house with petitioner's estranged wife, Marlene McIlvaine, and the two McIlvaine boys, ages 13 and 14. Petitioner picked up the boys and took them out for a pizza and then, after arming himself with a loaded gun, entered the house knowing that Scharber was there, found Scharber and killed him. Petitioner then waited for his wife to return and for the next 16 hours argued with her and discussed what he should do. Finally, petitioner shot her and left. She called the police, who responded and found Scharber's body and assisted her.

The first issue raised by petitioner relates to the district court's denial of his motion to dismiss the indictment. The grand jury originally filed a two-count indictment charging first-degree murder (for shooting and killing Scharber) and aggravated assault (for shooting Mrs. McIlvaine), but the district court sustained petitioner's demurrer to the indictment on the ground of duplicity and ordered the matter resubmitted to the grand jury. When the grand jury reindicted petitioner, issuing two separate bills, at least 12 of the jurors who voted to reindict were jurors who had heard the evidence when it was presented against petitioner. Petitioner, however, points to the fact that there was a total of only 15 jurors present who had heard the evidence and argues that for an indictment to be valid at least 16 of the jurors present must have heard the evidence.

Minn.St.1974, § 628.41 provided in relevant part that the grand jury "shall consist of not more than 23, nor less than 16, persons, and shall not proceed to any business unless at least 16 members are present." Rule 18.03, subd. 1, Rules of Criminal Procedure, although not in effect at the time this case was prosecuted, is substantially the same in language.

■ We have not found any case interpreting the statute which is in point. However, we interpret the statute as allowing an indictment so long as 16 grand jurors were present, even if one or more of them were disqualified from voting in a particular case, provided that at least 12 of the jurors who voted to indict were qualified to vote in the particular case. This is also the result that would be mandated if this case had arisen under the Rules, because Rule 18.02, subd. 2, Rules of Criminal Procedure, provides in relevant part as follows:

" * * * An indictment shall not be dismissed on the ground that one or more of the grand jurors was not legally qualified if it appears from the jury's records that 12 or more jurors, after deducting the number not legally qualified, concurred in finding the indictment."

Here there was a quorum in that at least 16 grand jury members were "present" and at least 12 of the jurors who voted were qualified.

■ Petitioner's only other contention is that at his trial on the first-degree murder charge the trial court erred in admitting Spreigl evidence about petitioner's subsequent nonfatal shooting of his wife. In denying postconviction relief the district court stated that this evidence was admissible on the issue of petitioner's intent and to negate petitioner's contention that his shooting of Scharber was in self defense. We agree.

Affirmed.